IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-02874-PAB

ROBERT DEQUINZE,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

      This matter comes before the Court on plaintiff Robert DeQuinze's complaint [Docket No. 3] filed on December 9, 2009.  Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]  For the following reasons, the Court will reverse and remand the Commissioner's decision.

---

[1]The Commissioner did not request oral argument, and plaintiff requested it "if only to clarify any outstanding issues, and at the Court's behest."  *See* Joint Case Management Plan [Docket No. 14] at 3, ¶ 9.  The Court concludes that the appeal can be resolved based on the parties' filings.

## I.  BACKGROUND

Mr. DeQuinze applied for disability benefits on October 14, 2003.[2]  He claimed that he was unable to work due to disability as of August 22, 2003.  Plaintiff's claim was initially denied and, after a hearing, again denied in a decision by an Administrative Law Judge ("ALJ") dated February 15, 2006.  Plaintiff appealed that denial to the Appeals Council of the Social Security Administration.  The Appeals Council reversed and remanded the matter to the ALJ.  The Appeals Council remanded the case because the "hearing recording [could not] be located" and "therefore, the record [was] incomplete" and, "[d]ue to claimant's impairments, the Council believe[d] that the Administrative Law Judge may wish to obtain medical expert testimony regarding the nature and severity of the claimant's impairments."  R. at 68.  Upon remand, the ALJ held a video hearing on July 18, 2007, during which plaintiff was represented by a non-attorney representative.

In an August 31, 2007 decision, the ALJ found that plaintiff had "the following severe impairments: nonalcoholic steatohepatitis, lumbarization of the lumbar spine, and sleep apnea."  R. at 29 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  In addition, the ALJ found that plaintiff's "depression . . . cause[s] more than minimal functional limitations, and [is] thus considered severe."  R. at 30.  The ALJ determined, however, that these impairments, alone or in combination, did not meet one of the listed impairments in the regulations.  *See* R. at 31-32.  The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

_____

[2]The ALJ stated that plaintiff filed his applications for benefits on August 28, 2003.  *See* R. at 27.  The record, however, indicates that the plaintiff filed the applications on October 14, 2003.  *See* R. at 122; *see also* Docket No. 15 at 4, Docket No. 18 at 5.

> perform a range of simple, unskilled sedentary exertional work activity, lifting and carrying up to ten pounds frequently and up to twenty pounds occasionally; sitting for up to six hours in a regular eight hour work day, and standing or walking for up to two hours, with the option to change position between sit and stand; while engaging in postural activities on a no more than frequent basis; and while avoiding concentrated exposure to extremes of heat or cold, and to environmental hazards such as dust, fumes, odors, and solvents.

R. at 32.

Based upon these findings and the testimony of a vocational expert ("VE"), the ALJ found that Mr. DeQuinze could perform jobs existing in significant numbers in the national economy. *See* R. at 37. Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. *See* R. at 38. The Appeals Council denied plaintiff's request for review of this denial on July 23, 2009. *See* R. at 14-18. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v.*

3

*Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial

if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not

"reweigh the evidence or retry the case," but must "meticulously examine the record as

a whole, including anything that may undercut or detract from the ALJ's findings in order

to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070*.*

Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d

1482, 1487 (10th Cir. 1993).

## B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful

work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical
> or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred when he relied upon the VE's testimony

despite its inconsistency with the Dictionary of Occupational Titles ("DOT").  The Court

agrees.  At step five of the evaluative process, the ALJ relied upon testimony by the VE

regarding "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity . . . ."  R. at 38; *see* R. at 976-77.  The VE identified three occupations that plaintiff could perform: (1) call out operator, (2) telephone quotation clerk, and (3) surveillance system monitor. R. at 38; *see* R. at 977.  All three of these positions are designated as having a General Educational Development ("GED") reasoning level of three in the Dictionary of Occupational Titles ("DOT").  *See Malusa v. Astrue*, 2009 WL 2707219, at *4-5 (D. Ariz. Aug. 25, 2009) ("The GED levels 'embrace[] those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective.'") (citing *Dictionary of Occupational Titles* ("*DOT*"), Appx. C. § III (4th ed. rev. 1991)).  Level three reasoning is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  *DOT*, Appx. C § III.

In *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), the Tenth Circuit addressed an ALJ's determination that a claimant limited to "simple and routine work" could perform the jobs of surveillance system monitor and call out operator.  *See id.* at 1176.  The court stated that the plaintiff's RFC "seems inconsistent with the demands of level-three reasoning."  *Id.*  The Tenth Circuit found that level two reasoning – which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few

6

concrete variables in or from standardized situations" – "appear[ed] more consistent

with Plaintiff's RFC" limitation to "simple and routine work."  *Id.*  Because the ALJ in that

case failed to address the "apparent conflict between Plaintiff's inability to perform more

than simple and repetitive tasks and . . . level-three reasoning," the Court reversed and

remanded that aspect of the ALJ's opinion.  *Id.*[3]

Plaintiff persuasively argues that there is no material difference between the

ALJ's conclusion at step five in this case and the conclusion reversed by the Tenth

Circuit in *Hackett*.  The Commissioner attempts to distinguish *Hackett* by focusing on

the inclusion of the word "routine" in the RFC in that case.  The Commissioner cites

nothing in *Hackett* supporting the argument that the "routine" aspect of the RFC differs

materially from the "simple" work activity in the RFC in this case.  *See Scheibeler v.*

*Astrue*, 2009 WL 3077310, at *3 (D. Colo. Sep. 21, 2009) ("A person such as Plaintiff

whose mental RFC is limited to 'simple' work and work that is not 'detailed' would thus

arguably lack the mental RFC for jobs at or above [reasoning level two].") (citing

*Hackett*, 395 F.3d at 1176; Clay *v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005); *Lucy v.*

*Chater*, 113 F.3d 905, 909 (8th Cir. 1997)).  Moreover, the Commissioner does not

contest that it was the ALJ's duty to "investigate and elicit a reasonable explanation for

any conflict between the [DOT] and expert testimony before the ALJ may rely on the

expert's testimony as substantial evidence to support a determination of nondisability."

---

[3]*See Duran v. Astrue*, 654 F. Supp. 2d 1298, 1303 (D. Colo. 2009) ("In *Hackett*, the Tenth Circuit held that when a claimant retains the mental RFC to perform only 'simple and routine work tasks' – and the ALJ finds a claimant not disabled at step five based on a vocational expert's testimony that the claimant is able to perform jobs with a reasoning level of three – a finding that the claimant was not disabled at step five is not based upon substantial evidence.").

*Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).[4]  In light of this error, this case

must be reversed and remanded.[5]

Plaintiff also contends that the ALJ erred when he "failed to determine if

Plaintiff's depression is disabling based on [a] treating physician['s] opinion of total

disability."  Docket No. 15 at 14.  Plaintiff received treatment from Dr. Abigail S. Lang, a

clinical psychologist.  Dr. Lang "provided family treatment with regard to managing the

complications and stresses auxillary [sic] to Mr. DeQuinze's health and financial

problems" and, "[s]ubsequently, Mr. DeQuinze beg[a]n group therapy, hopeful that it

would provide him necessary support."  R. at 868 (stating that, as of July 17, 2007, "Mr.

DeQuinze ha[d] attended a total of 76 therapy sessions since June 2004 . . . and

continue[d] group therapy bimonthly in order to learn to manage the considerable

stresses as well as his fears, anxiety, and depression with regard to his ongoing

medical problems and sequalae [sic].").  Dr. Lang diagnosed plaintiff with "Major

Depression, Recurrent, Mild to Moderate."  R. at 868.  Dr. Lang's treatment notes

reference "symptoms of depression and anxiety" and an "enormity of stress."  R. at 210;

*see id.* ("[Mr. DeQuinze] is totally disabled. . . .").

The Commissioner must "always consider the medical opinions in [a claimant's]

---

[4]Upon the earlier remand in this case, the Appeals Council instructed the ALJ to
"identify and resolve any conflicts between the occupational evidence provided by the
vocational expert and information in the Dictionary of Occupational Titles (DOT) and its
companion publication, the Selected Characteristics of Occupations."  R. at 69 (citing
Social Security Ruling 00-4p).

[5]The Court also notes that the hypothetical presented to the VE during the
hearing, *see* R. at 976-77, did not include a reference to "simple, unskilled" work or the
exclusion of jobs involving exposure to "environmental hazards such as dust, fumes,
odors, and solvents."  R. at 32.

case record" and "make findings about what the evidence shows." 20 C.F.R.

§ 416.927(b)-(c). Explaining how an ALJ will weigh medical opinions, Subsection

416.927(d) lists the following factors to be considered: examining relationship,

treatment relationship, supportability, consistency with the record as a whole, and

specialization. A treating source may be given controlling weight among the medical

evidence in a claimant's case record under certain circumstances. *Id.* at

§ 416.927(d)(2). Whether a treating source is given controlling weight or not, the

regulation guarantees that the Commissioner "will always give good reasons in our

notice of determination or decision for the weight we give your treating source's

opinion." *Id.* In short, 20 C.F.R. § 416.927 makes clear that in every case involving

supplemental security income benefits the Commissioner will weigh all medical opinion

evidence and set forth the reasons why a particular weight was assigned to treating

sources and other medical sources. Failure to follow this rule by not providing

adequate reasons for an ALJ's decision constitutes reversible error. *See Reyes v.

Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).

In this case, the ALJ failed to reference Dr. Lang by name. The extent of the

ALJ's consideration of her opinion occurred at step two of the evaluative process,

where the ALJ stated that, "[r]egarding [Mr. DeQuinze's] allegation of depression, the

evidence indicates that a treating psychologist has diagnosed mild to moderate

depression, for which the claimant has undergone a course of group therapy." R. at 30.

The ALJ then found that "other evidence is not as supportive." R. at 30. The ALJ,

however, ultimately found claimant's depression severe for purposes of the step two

analysis. When determining plaintiff's RFC at step four, however, the ALJ never

revisited Dr. Lang's opinion as required by 20 C.F.R. § 416.927.[6]

In light of the aforementioned errors, the ALJ's decision will be reversed and remanded.  The ALJ's consideration of Dr. Lang's opinion and the possibility of the record being supplemented on remand will provide the ALJ with the opportunity to reassess the totality of evidence supporting plaintiff's RFC.  Therefore, the Court will not address plaintiff's arguments that the ALJ failed to properly account for all of plaintiff's limitations when calculating plaintiff's RFC, *see* Docket No. 15 at 18-24, and improperly assessed plaintiff's credibility, *see* Docket No. 15 at 24-33.  *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").[7]

---

[6]In the event the ALJ concludes that "the evidence . . . receive[d] from [plaintiff's] treating . . . psychologist . . . [was] inadequate . . . to determine whether [he was] disabled," the ALJ has the duty to recontact the psychologist.  20 C.F.R. § 416.912(e); *see* 20 C.F.R. § 404.1512(e); *see White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty.") (quotation and alteration marks omitted).

[7]Plaintiff also contends that new evidence he submitted to the Appeals Council was not properly considered.  This remand does not prevent plaintiff from seeking to submit such evidence and arguments directly to the ALJ.  The ALJ may then revisit any issues, as necessary.  Furthermore, the Court notes that the Appeals Council stated in its September 28, 2006 remand order that, "[d]ue to claimant's impairments, . . . the [ALJ] may wish to obtain medical expert testimony regarding the nature and severity of the claimant's impairments."  R. at 68.  The ALJ did not obtain such testimony, but may do so upon remand.

**III. CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that the August 31, 2007 decision of the Commissioner that plaintiff

was not disabled is REVERSED and REMANDED for further proceedings consistent

with this opinion.


DATED January 10, 2011.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge